# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

JOSHUA RONALD SUMPTER,

          Plaintiff,

v.                              CIVIL ACTION NO. 5:16-cv-08951

UNITED STATES,

          Defendant.

## MEMORANDUM OPINION AND ORDER

The Plaintiff, Joshua Ronald Sumpter, filed a *pro-se Complaint* (Document 2), pursuant to the Federal Tort Claims Act (FTCA), asserting medical negligence claims against the Department of Veterans Affairs. By *Standing Order* (Document 3) entered on September 16, 2016, this matter was referred to the Honorable Omar J. Aboulhosn, United States Magistrate Judge, for findings of fact and recommendation for disposition. The United States moved to dismiss on February 28, 2017. In a *Proposed Findings and Recommendation* (PF&R) (Document 22) entered on July 31, 2017, Judge Aboulhosn recommend that the United States' motion to dismiss be granted and this matter be dismissed. The Court granted the Plaintiff an extension of time to file objections, and his objections to the PF&R (Document 32) were filed on November 13, 2017. The Plaintiff filed additional submissions supplementing his objections on November 30, 2017 and December 11, 2017 (Documents 33 & 34.) The Court has reviewed the PF&R, the objections, and the underlying briefing. For the reasons stated herein, the Court finds that the objections should be

sustained in part, and the United States' motion to dismiss should be granted in part and denied in part.

## FACTS[1]

Mr. Sumpter was medically retired from the military in July 2006, with service related multiple sclerosis (MS). He received a diagnosis before leaving the military, but asserts that the VA failed to provide treatment in accordance with the diagnosis. He established a medical relationship with the Beckley Veterans' Affairs Medical Center (VA) in October 2006. His treatment providers insisted on redundant examinations, failed to provide treatment within the standard of care, treated his MS as non-service connected, and refused to refer him to an external neurologist for treatment. He alleges that Dr. George Murphy, who reviewed his MRI in 2006, was negligent in failing to identify the brain lesions and white matter indicative of MS.

On several occasions, VA providers failed to connect Mr. Sumpter's symptoms, including cognitive decline, vision problems, and neuropathy, with his MS diagnosis. His primary care provider failed to adjust his treatment based on notes and records from emergency and specialist visits. Mr. Sumpter asserts that he did not begin receiving disease-modifying treatment, which can slow or alter the progression of MS, until August 2011. Because of the delay in appropriate treatment, he progressed to clinically definitive MS and was unable to return to active military service. He now receives care at outside facilities, some at his own expense, and reports some improvement. He also reports difficulty obtaining his prescriptions and occasional confusion regarding the appropriate prescriptions. In particular, he cites an instance on or about March 6,

---

1 The Court has accepted the Plaintiff's factual allegations as true, except as to facts relevant to the Court's jurisdiction for which the parties submitted evidence.

2015, when the VA failed to fill a prescription despite three attempts. Mr. Sumpter's complaint alleges negligence, malpractice, delayed medical care, and delay of benefits.

Mr. Sumpter filed an administrative claim with then Congressman Nick Rahall's office on August 8, 2014. The claim was finally denied on March 16, 2016, based on asserted untimeliness, Dr. Murphy's asserted status as an independent contractor and review by a neurologist finding that his condition was not worsened as a result of his VA care. Mr. Sumpter's complaint includes an attached letter from Dr. Enrico Cappiello, director of radiology at Beckley VAMC, concluding that Mr. Sumpter "had undiagnosed (MS) white matter disease from 2006 until 9/19/2012," evidenced by MRIs taken in 2006, 2007, and 2012. (Document 2 at 16.) Another attached letter from Dr. John Berryman, chief of staff at Beckley VAMC, recommended that Mr. Sumpter be provided disability benefits and noted that his MS symptoms were "expressed but not treated until 2012." (Document 2 at 17.)[2] Dr. Berryman further opines that "if treatment with appropriate medications had been instituted in a timely fashion, Mr. Sumpter would not have the more advanced form of MS he is experiencing at present." (*Id.*)

## STANDARD OF REVIEW

### A. *Objections to PF&R*

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation

---

[2] These letters were prepared in support of a separate claim for disability benefits filed with the VA.

to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). When reviewing portions of the PF&R de novo, the Court will consider the fact that Petitioner is acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

### B. Motion to Dismiss – 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

4

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

*C. Motion to Dismiss – 12(b)(1)*

A motion to dismiss pursuant to Rule 12(b)(1) raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it. "In contrast to its treatment of disputed issues of fact when considering a Rule 12(b)(6) motion, a court asked to dismiss for lack of jurisdiction may resolve factual disputes to determine the proper disposition of the motion." *Thigpen v. United States*, 800 F.2d 393, 396 (4th Cir. 1986) *rejected on other grounds, Sheridan v. United States,* 487 U.S. 392 (1988) (but explaining that a court should accept the allegations in the complaint as true when presented with a facial attack that argues insufficiency of the allegations in the complaint). Reasonable discovery may be necessary to permit the plaintiff to produce the facts and evidence necessary to support their jurisdictional allegations. *Id.* The plaintiff has the burden of proving that subject matter jurisdiction exists. *See Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991). Dismissal for lack of subject matter jurisdiction is proper only if there is no dispute regarding the material jurisdictional facts and the moving party is entitled to prevail as a matter of law. *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

**DISCUSSION**

The Magistrate Judge recommends granting the United States' motion to dismiss. He first noted that, to the extent Mr. Sumpter sought to bring a delay of benefits claim appealing the VA's denial of disability benefits, that claim must be denied for lack of jurisdiction. Next, the Magistrate Judge points out that Mr. Sumpter admitted that he believed it was unnecessary to provide a Notice of Claim or a Screening Certificate of Merit, and did not do so. Therefore, he recommends dismissal for failing to comply with the MPLA. The Judge went on to find that if

claims otherwise survived, the motion to dismiss for failure to comply with the statute of limitations should be denied because there is a question of fact regarding when the Plaintiff learned of the alleged negligence, although he found that equitable tolling was not justified. The PF&R stated that dismissal for failure to exhaust administrative remedies was required as to claims related to Mr. Sumpter's 2015 prescriptions. Next, the Judge found that Mr. Sumpter did not demonstrate that Dr. Murphy was an employee, as opposed to an independent contractor. Finally, he recommended dismissal of Mr. Sumpter's claim for punitive damages.

Mr. Sumpter argues that he complied with all applicable filing requirements. He indicates that he did not intend to bring a claim related to his separate disability proceeding, and does not object to dismissal of any such claim. He asserts that he did not file a notice of claim or screening certificate of merit because he followed the instructions contained in the administrative denial, describing the process by which claimants may file suit in federal court within six months of final denial of a claim. He further notes that notifications of the claim were sent to officials during the FTCA administrative claims process. Mr. Sumpter argues that it was not necessary to submit a screening certificate of merit because Dr. Berryman and Dr. Cappiello supplied letters recognizing errors in the VA's diagnosis and treatment of his MS. He objects to the Magistrate Judge's conclusion that, if the facts ultimately demonstrate that his administrative tort remedy was filed more than two years after he learned of his injury and its cause, he is not entitled to equitable tolling. He stresses his diligence in contacting various officials for assistance, and states that his MS causes cognitive difficulties, chronic fatigue, and vision problems that interfered with his efforts to understand and review legal and medical information. Mr. Sumpter further disputes the

finding that Dr. Murphy was an independent contractor for FTCA purposes. Finally, he argues that the United States should waive its sovereign immunity with respect to punitive damages.

As an initial matter, Mr. Sumpter's objections do not address the dismissal of claims related to his 2015 prescriptions, and the motion to dismiss for failure to exhaust administrative remedies should be granted as to those claims.

## A. FTCA Statute of Limitations

The FTCA requires tort claims against the United States to first be presented to the appropriate federal agency before suit may be initiated in federal court. 28 U.S.C. § 2675. Claims must be presented to the agency within two years. *Id.* § 2401(b). If the agency denies the claim, a federal tort claim must be filed within six months of the date of mailing of the notice of denial. *Id.* "[T]he FTCA's time bars are nonjurisdictional and subject to equitable tolling." *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1638 (2015). However, equitable tolling is available only if plaintiffs "show that they have pursued their rights diligently and extraordinary circumstances prevented them from filing on time." *Raplee v. United States,* 842 F.3d 328, 333 (4th Cir. 2016), *cert. denied,* 137 S. Ct. 2274 (2017).

Mr. Sumpter filed his federal claim within six months of the final denial of his administrative claim. The only issue here is whether his administrative tort claim was filed within the two year statute of limitations. Mr. Sumpter objects to the finding that he is not entitled to equitable tolling. The Magistrate Judge found that further factual development was needed to determine when Mr. Sumpter's cause of action accrued, but that he had not shown that he was entitled to equitable tolling. The United States did not object to the recommendation that the motion to dismiss based on the statute of limitations be denied, given the factual dispute as to when

8

Mr. Sumpter should have been aware of the alleged negligence and medical malpractice. The Court finds that any ruling regarding equitable tolling is premature. Equitable tolling serves as an extension of the applicable statute of limitations where a plaintiff failed to file on time despite diligent effort. Absent a determination that Mr. Sumpter, in fact, failed to timely file his administrative tort claim, it is unnecessary to reach the question of whether he would be entitled to equitable tolling. Thus, should the evidence ultimately show that Mr. Sumpter's claim was not timely filed, he will retain the opportunity to demonstrate that he is entitled to equitable tolling.

### B. Independent Contractor

The FTCA waives sovereign immunity for certain torts committed by employees of the United States, but does not waive immunity as to the acts of independent contractors. *Logue v. United States*, 412 U.S. 521, 527-28 (1973); *Robb v. United States*, 80 F.3d 884, 887 (4th Cir. 1996). Reviewing case law, the Fourth Circuit explained that "only where the Government has the power under the contract to supervise a contractor's 'day-to-day operations' and 'to control the detailed physical performance of the contractor' can it be said that the contractor is an employee or agent of the United States within the intendment of the Act." *Wood v. Standard Prod. Co.*, 671 F.2d 825, 829 (4th Cir. 1982) (citations omitted). The court further held that "the real test is control over the primary activity contracted for and not the peripheral, administrative acts relating to such activity." *Id*. at 832. The Fourth Circuit summarized the factors considered in *Wood*, which involved a physician who contracted to provide services for the United States Public Health Service, as follows:

> In addition to noting PHS's lack of control of the physician's medical judgment, the *Wood* court considered: (1) that the physician under the contract was referred to as a "contract physician," (2) that the physician was to provide "outpatient" care, (3) general statements

> concerning the manner and quality of service required under the contract, (4) the lack of control by the government over the prescription of drugs and medical supplies, (5) the authority of the physician to make referrals, (6) contractual requirements for office hours and the ability of the physician to decline to see patients, (7) the physician's responsibility to provide office space, support staff, supplies, and equipment, (8) the percentage of the physician's total practice which was devoted to activities under the contract, (9) the nature of the compensation to the physician, including method (fee schedule) and rates (similar to the physician's usual fees), (10) PHS recordkeeping requirements, (11) prescribed methods of verifying patient eligibility for treatment, and (12) the extent of PHS's review of the physician's offices.

*Robb*, 80 F.3d at 889 (citing *Wood*, 671 F.2d at 830 & n. 10).

Discovery has not begun in this case, although the parties each attached some documents to their briefing. The following facts are based on the evidence adduced by the parties at this stage.[3] The United States indicates that the contract with Dr. Murphy has been purged. The United States contends that Dr. Murphy was an independent contractor who provided radiology services through a contract with Jackson & Coker, a firm that provides locum tenens health care.[4] A contract specialist with the VA indicates that Dr. Murphy would have been required to provide his own liability insurance. Mr. Sumpter contends that Dr. Murphy was "an on-station fee base employee." (Document 34 at 2, citing a document entitled "Board Action" and att'd as Document 33-1.) The Plaintiff contends that Dr. Murphy's office space was at the VA, and he worked exclusively for the VA during his contract period. No information has been provided as to the majority of the *Wood* factors. Given the information available at this stage, the Court finds that

---

[3] Because the United States does not waive sovereign immunity as to torts committed by independent contractors, the Court would lack jurisdiction if Dr. Murphy was an independent contractor. Therefore, documents not integral to the complaint may be considered as to the motion to dismiss pursuant to Rule 12(b)(1).

[4] It is not clear to the Court that the scope of Mr. Sumpter's FTCA claim is limited to the acts and omissions of Dr. Murphy. The narrative portion of his complaint asserts negligence on the part of his primary care providers, as well, an issue not addressed in the briefing before the Magistrate Judge.

limited discovery will be necessary to determine whether Dr. Murphy was an independent contractor under the applicable legal standards. Therefore, the United States' motion to dismiss on the grounds that Dr. Murphy was not an employee should be denied.

### C. MPLA

"Because the FTCA merely waives sovereign immunity to make the United States amenable to a state tort suit, the substantive law of the state where the tort occurred determines the liability of the United States." *Raplee*, 842 F.3d. at 331. The West Virginia MPLA contains substantive procedures and rules applicable to medical liability suits. Among other things, it requires claimants to serve any health care providers they intend to sue with a notice of claim setting forth the theory of liability, and a screening certificate of merit completed by an expert.[5] Courts within this district have found that the MPLA applies to FTCA actions that involve allegations of medical malpractice. *See, e.g.*, *Johnson v. United States*, 394 F. Supp. 2d 854, 857 (S.D.W. Va. 2005) (Chambers, J.); *Martin v. United States*, No. CIV.A. 1:10-1399, 2012 WL 1111326, at *4 (S.D.W. Va. Mar. 30, 2012) (Faber, S.J.). Where a defendant asserts that the pre-suit notice of claim or screening certification of merit was not legally sufficient, the defendant must provide the plaintiff with specific written notice of the asserted deficiencies, and the plaintiff must have the opportunity to correct any deficiencies. Syl. Pt. 6, *Cline v. Kresa-Reahl*, 728 S.E.2d 87, 89 (W. Va. 2012). In certain circumstances where the information shared fully overlaps, documents filed in an FTCA administrative claim may meet the requirements of a notice of claim under the MPLA. *Johnson*, 394 F. Supp. at 858.

---

5 The screening certificate of merit is to include the expert's familiarity with the standard of care, the expert's qualifications, the expert's opinion regarding breach of the standard of care and the expert's opinion as to causation. W. Va. Code § 55-7B-6(b).

The Court finds that the Magistrate Judge correctly found that Mr. Sumpter was required to comply with the MPLA, and did not provide the United States with a sufficient notice of claim or screening certificate of merit. Mr. Sumpter's claim of medical malpractice in reading MRIs and treating MS will require expert testimony. It is not clear whether the letters from Dr. Berryman and Dr. Cappiello constitute deficient certificates of merit or Mr. Sumpter neglected to send a certificate of merit entirely.[6] In either case, however, the Court finds that dismissal is not the appropriate remedy under the facts presented.

Mr. Sumpter is pro-se, and this case presents procedural hurdles that experienced attorneys sometimes struggle to navigate.[7] "The requirement of a pre-suit notice of claim and screening certificate of merit is not intended to restrict or deny citizens' access to the courts." Syl. Pt. 5, *Gray v. Mena*, 625 S.E.2d 326, 328 (W. Va. 2005). The West Virginia Supreme Court and courts within this district have emphasized that the MPLA is intended to prevent frivolous medical malpractice lawsuits and promote pre-suit resolution of non-frivolous medical malpractice claims, and motions regarding compliance with the MPLA should be reviewed in light of that statutory purpose. Syl. Pt. 6, *Hinchman v. Gillette*, 618 S.E.2d 387, 389 (W. Va. 2005); *Cooper v. Appalachian Reg'l Healthcare, Inc.*, No. CIV.A. 5:04-1317, 2006 WL 538925, at *2–3 (S.D.W. Va. Mar. 3, 2006) (Faber, C.J.). Mr. Sumpter's claim does not appear to be frivolous on the substantive merits, and Dr. Berryman and Dr. Cappiello's letters provide support for the dual

---

[6] If Mr. Sumpter's filings and paperwork supplied prior to filing suit, during the course of his administrative claim and otherwise, constitute a deficient notice of claim and screening certificate of merit, the Court notes that there is no evidence that the Defendant made a written request for a more definite statement. It is clear that the United States contemplated the possibility that Dr. Berryman and Dr. Cappiello's letters could be viewed as a screening certificate of merit, based on discussion of their asserted deficiencies in the motion to dismiss.

[7] The Court notes that Mr. Sumpter has referenced his attempts to obtain counsel. The Court has provided him time to renew those efforts, if desired. The Court is unable to offer legal advice or recommend attorneys. However, the West Virginia State Bar (www.wvbar.org) may have helpful resources to connect litigants with experienced counsel.

propositions that Mr. Sumpter's claim is potentially meritorious, and that the VA had some understanding of the nature and merits of his claim prior to his filing suit.

The West Virginia Supreme Court has found that dismissal was too harsh of a remedy for failure to comply with the MPLA where the plaintiff reasonably—though incorrectly—believed the MPLA did not apply to her claim. *Gray*, 625 S.E.2d at 332; *Blankenship v. Ethicon, Inc.*, 656 S.E.2d 451, 454 (2007). This Court has held that "[r]ectifiable deficiencies are generally insufficient to warrant dismissal unless the plaintiff has willfully ignored them and made no effort to correct." *Earle v. City of Huntington*, No. CV 3:14-29536, 2016 WL 3198396, at *5 (S.D.W. Va. June 8, 2016) (Chambers, C.J.). Although the circumstances are not identical to prior cases, and dismissal has been found appropriate in some instances, the Court finds that dismissal would be too harsh of a remedy in this case. Therefore, the Court will deny the motion to dismiss for failure to comply with the MPLA, and stay the case to permit Mr. Sumpter the opportunity to demonstrate compliance and amend his complaint.

### D. Punitive Damages

Finally, Mr. Sumpter objects to the dismissal of his claim for punitive damages. The United States has not waived sovereign immunity for punitive damages. 28 U.S.C. § 2674. Mr. Sumpter's complaint includes a request for punitive damages, with a description explaining that he seeks $10,000,000 "for the depreciation of my own and my family's lives," and that "actual damages [are] not measurable." (Compl. at 6.) Mr. Sumpter's narrative suggests that some of the damages he seeks would more accurately be classified as non-economic compensatory damages, which may be recoverable under the FTCA. *Molzof v. United States*, 502 U.S. 301, 308 (1992) (determining that the waiver of sovereign immunity barred only damages legally classified

as punitive damages, and does not bar damages "which are for some reason above and beyond ordinary notions of compensation," but do not "embod[y] an element of the defendant's conduct that must be proved before such damages are awarded.") To the extent Mr. Sumpter seeks punitive damages, as that term is legally defined, his claim for such damages should be dismissed.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the Plaintiff's objections (Document 32, 33, & 34) be **OVERRULED** in part and **SUSTAINED** in part. The Court **ORDERS** that the *United States' Motion to Dismiss* (Document 10) be **GRANTED** as to the negligence claim for failure to fill a 2015 prescription and as to any claim for punitive damages. The Court **ORDERS** that the *Motion* (Document 10) be **DENIED** as to the negligence and medical malpractice claims included within Mr. Sumpter's administrative tort claim. The Court further **ORDERS** that this matter remain **STAYED** for a period of **sixty (60) days** to permit the Plaintiff to (a) determine whether to continue pro se or to have counsel make an appearance on his behalf and (b) comply with the MPLA[8] and amend his complaint accordingly.

The Court **DIRECTS** the Clerk to send a copy of this Order to Magistrate Judge Omar J. Aboulhosn, to counsel of record and to any unrepresented party.

ENTER: May 10, 2018

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

8 Should the parties wish to engage in the pre-litigation mediation contemplated by the MPLA, they may jointly seek appointment of a magistrate judge to conduct such mediation, if desired.